(The Superior Court of Cincinnati—In Special Term.)

## THE CITY OF CINCINNATI v. THE CINCINNATI INCLINED PLANE RAILWAY CO.

1. In an action brought by the City of Cincinnati against the Cincinnati Inclined Plane Railway Company a decree was entered by the Superior Court of Cincinnati in general term, perpetually enjoining the defendant company from operating its line of street passenger cars, but which provided that the operation of the decree should be stayed for six months from the date thereof, with liberty on the part of the defendant to apply for an extension of said time.

This judgment was affirmed by the supreme court and a mandate issued accordingly. The superior court of Cincinnati at special term, to which this case had been remanded, on application of the defendant for a further extension of time, ordered that the operation and enforcement of the decree of injunction in the decree be suspended for six months, with leave to apply fo a further extension thereof.

Proceedings were then instituted by the Cincinnati Inclined Plane Railway Company to enjoin the plaintiff and the Cincinnati Street Railway Company, which had been made a party, and filed an answer and cross petition therein, from a threatened interference, notwithstanding the order of the court, with the operation of its line of street railway during the period of said stay.

Held: That the court in the exercise of its inherent power to enforce its own orders will restrain the parties to the action, upon a proper showing, from attempting by force or otherwise to interfere with the operation of the defendant's railway until the expiration of the stay theretofore granted.

2. In such case the court will not take possession of the defendant company's line of street railway and operate or control the same through a Receiver during such stay, especially when it appears that the defendant company is in the successful operation of its railway and has even extended its line.

(Decided Tuesday, April 13, 1897.)

HUNT, J.

This case comes before the court on an application for an injunction and the appointment of a Receiver.

### The Pleadings.

The supplemental answer and cross-petition filed January 2, 1897, recites that the defendant is now and has heretofore been operating a public railway, consisting of an Inclined Plane Railway with connecting tracks over the streets, which is a great and necessary convenience to the vast number of citizens living and doing business along its

[COPYRIGHT, 1897, BY CARL G. JAHN.]

line who are in daily use thereof, and that the cessation of its operation would be a great detriment and irreparable damage to those so circumstanced; that by the declaration of the decree of this court its franchise to use and operate its line over certain streets has run out and requires renewal for the transaction of business; that under the laws of the state and the ordinances of the city of Cincinnati, the said city of Cincinnati has the power to renew said franchise and grant the same for a limited period of time, upon such terms and conditions as the city of Cincinnati may deem advisable and as may be just and equitable, having regard to the rights of the parties.

It is further alleged that in a certain action brought by the Louisville Trust Company, the trustee of one of the mortgages conveyed to said trustee by a certain trust deed, and under which trust deed certain bonds amounting to $375,000 are outstanding in the hands of innocent purchasers, who paid full value therefor, the circuit court of the United States held and decided that the rights of the said Louisville Trust Company by reason of the conveyance of this defendant's property were separate and distinct from those of the defendant, and therefore adjudged and decreed that certain grants made in 1871, without limitation of time, and in 1875 for a period of thirty years, and covering a portion of the railroad of this defendant from the south line of the Inclined Plane north and east to Auburn avenue, and thence by single track to Vine street, and thence by double tracks on Vine street to the corporation line of the city of Cincinnati and Avondale, were still in force and were valid grants for the periods named.

It is further alleged that by the terms of an ordinance of the city of Cincinnati, passed October 27, 1875, the only reservation as to granting privileges for other roads to run over the tracks of the defendant company was a reservation to the council of the city of Cincinnati to grant to other companies the right to use and occupy only so much of the tracks of this company provided for in said ordinance as were then in use or should be placed on Vine stree beween Corry and St. Clair streets.

The defendant further says, that acquiescing in the declaration of this court by its decree (of October 21st, 1893) as to the expiration of certain rights and franchises of this defendant company, it has made application to the city of Cincinnati through its proper Board for an extension of its franchises and grants, and it hopes in the near future to obtain such extension upon such proper terms as the city of Cincinnati may see fit to impose, and the defendant believes and alleges the fact to be that it will in the near future obtain a renewal of the rights that have expired.

The defendant further says that the Board of Administration of the city of Cincinnati, after the affirmance of the decree in this cause in the Supreme Court of Ohio in an-

swer to an application made by the defendant for the renewal of those rights, made a counter proposition which was not acceded to and which was in some respects unreasonable; and thereafter the Board of Administration of the city of Cincinnati on April 3, 1896, proceeded to, and did, pass a resolution providing for the extension of route No. 5 of street passenger railroad, a route in the ownership of the Cincinnati Street Railway Company, over the streets practically occupied by the plaintiff's company, which franchise was afterwards accepted by the Cincinnati Street Railway Company, but with full knowledge of the pendency of the suits hereinbefore referred to; that the Cincinnati Street Railway Company is now threatening to occupy at once over a large portion of its route the same ground and space on the streets as are now occupied by the tracks of the Cincinnati Inclined Plane Company, and that the making and operation of the same will be a destruction and confiscation of the franchise and rights of this defendant; and that said extension is contrary to the provisions of the ordinance above mentioned, and is illegal and void and will impair the obligations of the contract between this company and the city of Cincinnati, and will be a taking of the property of the Cincinnati Inclined Plane Railway Company without due process of law.

The defendant further says that the city of Cincinnati has, by the institution of this suit, submitted its rights and the method of obtaining the same to this court, and has obtained all the relief it is entitled to in any form of action or proceeding, and that the Superior Court of Cincinnati, on the 19th day of December, 1896, for reasons sufficient to this court, snspended the execution of its decree and declared that it should be illegal and unlawful for the city of Cincinnati to forcibly stop the operation of its road by the defendant, or to interfere therewith in any way for a period of six months from the entry of the said order, which was an order of suspenson of the execution of said decree; but notwithstanding said order the city of Cincinnati and the Cincinnati Street Railway Company are claiming the right to tear up the rails of the defendant company and to stop the running of its cars on the ground that the occupation of said streets is a public nuisance and may be abated by force; and they are now seeking in the United States Court to have the receiver of this company properly discharged that it may take the latter into its own hands and destroy the company's property, and unless this court interposes such result will be consummated.

The equitable intervention of this court is therefore sought to the end that the Cincinnati Street Railway Company may be made a party defendant to this action and that the court will enjoin it and the city of Cincinnati from interfering in any way by force or otherwise with the operation of the defendant's road until the expiration of the stay granted by this court, and that in the meantime, in order to prevent the destruction of this company's property and the frittering away of its assets and means, a receiver may be appointed for the purpose of operating the road and preserving the property until the further order of court.

The city of Cincinnati on January 30, 1897, filed a reply to the supplemental answer and cross-petition of the Cincinnati Inclined Plane Railway Company, in which it denies that said city has, by the institution of this suit, submitted its rights and the method of obtaining the same to this court, and has obtained all the relief it was entitled to in any form of action or proceeding, and it further denies that this court, has declared that it should be illegal and unlawful for said city to forcibly stop the operation of its road by said Cincinnati Inclined Plane Railway Company, or to interfere therewith in any way for a period of six months from the entry of the order made herein on the 19th day of December, 1896.

The city of Cincinnati further says that on or about December 18, 1894, said Cincinnati Inclined Plane Railway Company, having petitioned the Board of Administration of said city for a renewal of the grant of said route No. 8, said Board thereafter on or about January 22nd, 1895, stated the terms and conditions upon which it would make or recommend said renewal, which terms and conditions were, thereupon rejected by said railway company; that thereafter, on or about the 19th day of February, 1895, the said Board of Administration ordered said Cincinnati Inclined Plane Railway Company to remove or cause to be removed its tracks from said streets on or before the 18th day of March, 1895, and also further ordered said company to remove its inclined plane where the same cross Miami, Baltimore, Dorsey and Locust streets or to occupy any portion of the streets or avenues of said city on or before the 23rd day of April, 1895.

That thereafter, a suit was brought by the Louisville Trust Company against the City of Cincinnati, as alleged in the second supplemental answer filed herein on the 14th day of May, 1896, as referred to in the supplemental answer and cross-petition filed herein on the 2nd day of January, 1897, and proceedings were had therein until the —— day of December, 1896, when said suit was consolidated with cause No. 4859 in said court, being an action instituted by the Louisville Trust Company against The Cincinnati Inclined Plane Railway Company praying for a foreclosure of the mortgage held by the complainant on the property of the defendant and a sale of the property and the appointment of a receiver, in which case on the 12th day of October, 1895, a receiver was appointed by said circuit court of the United States, the said Cincinnati Inclined Plane Railway Company consenting thereto.

That said receiver took possession of said railway and operated the same; that thereafter, the said circuit court of the United

States upon an intervening petition theretofore filed in said cause No. 4859 in said court, made an order on the 4th day of January, 1897, that from and after the receipt by the said receiver of a notice from the Board of Legislation of said city that his operation of the Inclined Plane Railway in any of the streets in which, by the decree and opinion of the Circuit Court of Appeals, the grants owned by said Cincinnati Inclined Plane Railway Company have expired, and is unlawful and forbidden, and that the said receiver is enjoined from operating the railway in such streets, and he is directed to surrender possession of the property of the said Inclined Plane Railway Company, placed in said streets, to said Inclined Plane Railway Company, and further that upon the written application by the Louisville Trust Company, filed in said case, the said receiver should deliver possession of all the remainder of the property of said Inclined Plane Railway Company in his custody to said company on the condition consented and agreed to in writing and filed in said case by said company that it will turn over to the receiver the monthly net earnings from the operation of its property.

That thereafter, on the 25th·day of January, 1897, the Board of Legislation of said city duly passed a resolution that the operation of said railway in Main street from Liberty to Fifth street, Court street, Walnut street, Fifth street, and upon more than one track in Auburn avenue, from Mason street to Vine street, and the crossing or occupying by the Inclined Plane of Miami, Baltimore, Dorsey, 'Miami and Locust streets is unlawful and forbidden, and that notice of said resolution be given to said receiver.

That thereafter. on the 26th day of January, 1897, notice of said resolution was given to said receiver; that thereafter, the Louisville Trust Company filed in said court its written application that said receiver delivered possession of the property of said Inclined Plane Railway Company in his custody to said Inclined Plane Railway Company, said company having consented and agreed in writing filed in said case. to turn over to said receiver the monthly net earnings aforesaid. And that said receiver did thereupon, on or about the 28th day of January, 1897. surrender possession of all the property of said Cincinnati Inclined Plane Railway Company used in the operation of its railway to said company.

Plaintiff further says that the streets named in said resolution of the Board of Legislation of January 26, 1897, are the same streets in which, by the decree and opinion of the Circuit Court of Appeals, the grants owned by said Cincinnati Plane Railway Company have expired.

Plaintiff further says that it denies that in seeking to have said receiver enjoined from using said streets and operating said railway therein, it did so in order to destroy said company's property; and it denies that

unless this court interposes such result will be consummated.

The defendant, The The Cincinnati Street Railway Company on January 30th. 1897, filed its answer to the supplemental answer and cross petition of the defendant, The Cincinnati Inclined Plane Railway Company. filed herein on the 2nd day of January, 1897, in which it denies that the railway now being operated by the defendant, The Cincinnati Inclined Plane Railway Company, is of great and necessary convenience to the citizens living and doing business along its line, or that the cessation of its operation would be a great detriment and irreparable damage to such citizens.

It further denies that the city of Cincinnati has power to renew for any length of time the franchise and grant heretofore held by said defendant, The Cincinnati Inclined Plane Railway Company, upon any terms or conditions whatever. It further denies that the Circuit Court of the United States in the action alleged lately to have been brought by the Louisville Trust Company, has adjudged and decreed that certain grants made in 1871 and 1875, in said supplemental cross-petition set forth and described, are still in force and are valid grants for the periods named; that although the said Cincinnati Inclined Plane Railway Company hopes in the future to obtain rights or grants from the city of Cincinnati, as alleged in its supplemental cross-petition, yet this defendant says no fact exists upon which to found a belief, and this defendant has no knowledge that the Cincinnati Inclined Plane Railway Company will in the future obtain any renewal of its rights which have expired; and this defendant therefore denies the allegation thereof and demands proof thereof.

The defendant further denies that the Board of Administration of said city of Cincinnati in answer to the application made by said Cincinnati Inclined Plane Railway Company for a renewal of its rights, made a counter-proposition which was in some respects unreasonable; but this defendant admits that said Cincinnat Inclined Plane Ralway Company did not accede to the terms of said counter proposition, and avers on the contrary that it unreasonably declined and refused to accept the same.

The defendant admits that the Board of Administration of said city passed the resolution of April 3, 1896. providing for the extension of route No. five (5) of street passenger railroads, and that this defendant accepted the same, as set forth in said supplemental cross-petition; but the defendant avers that it thereupon gave the bond provided for in said resolution, duly approved by said Board of Administration, and further that the description of such extension is erroneously set forth in said supplemental cross-petition, in that it omits Fourth street between Main and Walnut streets, also Liberty streets between Broadway and Beckett streets in the alternative grant made, also in one or two other minor matters, such as

substituting route No. 12 for route No. 9 and route No. 15 for route No. 5, and the like.

The defendant further answering avers that on the 16th day of July, 1896, said Board of Administration duly passed a resolution extending route nine (9) of street passenger railroads belonging to the defendant, and that the defendant thereupon accepted the grant provided for in said resolution, and gave the bond to the approval of said Board of Administration as therein required.

The defendant further avers that on the 3rd day of April, 1896, said Board of Administration duly passed a resolution extending route No. eighteen (18) of street passenger railroads belonging to the defendant, and that the defendant thereupon accepted the grant provided for in said resolution.

The defendant further avers that under its said several grants it has heretofore and at great expense, constructed the street railway tracks, curves and turn-outs, and the systems of over-head electric plants, as authorized in said several resolutions, in McMicken avenue and in Twelfth street, to the inter-sections of Main street; that it is ready and desires to complete the construction of each of said extensions with their respective over-head plants, and no portions of the tracks or plants so constructed as aforesaid can be utilized unless and until said company is permitted to enter upon and occupy the other portions of said several extensions as described in said resolutions including the portions of Main street as therein authorized; that the construction work and expenditures were made pursuant to the authority vested in said company by said several resolutions and upon the faith thereof; and that by the operation of said extensions together with the existing street railroad routes of defendant through its transfer system the necessities and convenience not only of the citizens living along and in the neighborhood of said proposed extensions, but of the citizens generally of said city, will be greatly subserved and enhanced.

The defendant denies that the extension of route No. five (5) set forth in the said supplemental cross-petition, is for any reason illegal and void; and denies that it impairs the obligation of any contract between the said Cincinnati Inclined Plane Company and the city of Cincinnati; and denies that it provides for the taking of any property of said Cincinnati Inclined Plane Company without due process of law; and denies that it will in its operation or effect in any wise destroy or confiscate any franchise or right of said Cincinnati Inclined Plane Railway Company.

The defendant further denies that this court on the 19th day of December, 1896, or at any other time, decreed or declared that it should be illegal and unlawful for the city of Cincinnati to forcibly stop the operation of its road by the Cincinnati Inclined Plane Railway Compny, or to interfere therewith in any way for a period of six months from the entry of said order.

The defendant denies that it proposes by tearing up the rails or otherwise to interfere with the running of its cars by the said Cincinnati Inclined Plane Railway Company on any portion of the streets or route other than the tracks or rails which this court has heretofore by its judgment in this cause adjudged and decreed to be illegally maintained and operated by the said defendant, The Cincinnati Inclined Plane Railway Company. And the defendant avers that the final judgment heretofore rendered and entered by this court in this cause, estops said Cincinnati Inclined Plane Railway Company from claiming any right to maintain or operate and from maintaining or operating any track or tracks or electric plant or appendage in any portion of any of the street covered by said judgment.

### History of the Case.

It appears that the original action was begun on December 12, 1890, by the city of Cincinnati, in which the equitable interference of the company was sought to enjoin the defendant from maintaining and operating its cars upon more than one track on Auburn street between Mason and Vine streets and from maintaining its tracks or operating its cars upon any of the said tracks on Main street, Court street, Walnut and Fifth streets, and also to recover a certain amount of money claimed to be due for unpaid license fees.

The contention of the city was that the Cincinnati Inclined Plane Railway was liable for a large amount of money for license fees claimed to be due to the defendant in the operation of a street railway in the city of Cincinnati; and secondly, that the defendant company had no legal right to continue such operation for the reason that, as to a certain part of its route, its franchise had expired, and that as to the remaining portion the route the grant was without authority of law, and therefore, illegal and void.

The case was reserved to the general term, and on the 21st day of October, 1893, (Min. 16. Gen. Term,) the court made a finding: "That The Cincinnati Inclined Plane Railway Company at the time of the commencement of this action was unlawfully maintaining and operating in the city of Cincinnati, a street railway by double track on Main street between Mulberry street and Court street; by single track on Court street between Main and Walnut streets; by single track on Fifth street between Main and Walnut streets; and by single track on Main street between Fifth and Court streets, together with the necessary poles and other appliances for the operation of same by electricity as a motive power; further, that at the time of the commencement of this action, said defendant was unlawfully maintaining and operating in the city of Cincinnati, more than one street railway track on

Auburn street between Mason and Vine street.

It was adjudged and decreed that the defendant be and the same is perpetually enjoined from maintaining any of its said tracks, poles, wires and said other appliances in Main street, Court street, Walnut street and Fifth street, and from operating any of its cars over any of said tracks, and also be perpetually enjoined from operating or maintaining more than one street railroad track on Auburn street between Mason and Vine streets. There was a further finding as to unpaid license fees, and the cause was remanded to the Superior Court at special term for trial for the purpose of determining the assessment in money which the city of Cincinnati is entitled to recover from the defendant.

The decree contained the further recital: "It is further ordered that the operation of this decree be and the same is hereby stayed for the period of six months from the date hereof, with liberty on the part of the defendant to apply for an extension of said time."

The judgment was affirmed by the supreme court in Railway Company v. The City of Cincinnati, 52 Ohio St. 609, for reasons stated in the opinion in the City of Cincinnati v. The Cincinnati Inclined Plane Railway Company, Superior Court of Cincinnati in General Term, 30 W. L. B., 321. Afterwards the Louisville Trust Company, a corporation under the laws of Kentucky, brought an action in the United S. Circuit Court, S. D. Ohio, as trustee under a mortgage executed on January 1, 1889, by the Cincinnati Inclined Plane Railway Company, to secure the payment of its negotiable bonds to the amount of $5,000.00, with six per cent. interest.

The U. S. Circuit Court in Louisville Trust Company v. The City of Cincinnati, 76 Fed. Rep. 296, has taken substantially the same view of the rights of the parties that was taken by the state courts, with the exception that the Federal court was of the opinion that the grant held by the defendant upon Main street between Mulberry and Liberty streets, and the grants upon Locust and Mason streets, and the grant for a single track upon Auburn street, were valid. A receiver was appointed by the U. S. Court during the litigation herein, who continued in the operation of the road until on or about the 8th day of January, 1897, when the receiver, was discharged from the further operation of the road, and the Cincinnati Inclined Plane Company again assumed the management and control of the same.

It further appears that the Board of Administration of the city of Cincinnati, on April 3rd, 1896, passed a resolution providing for the extension of route No. 5, of street passenger railroads, and which included the right to extend its tracks over certain streets now occupied by the Cincinnati Inclined Plane Railway Company, and that on the 3rd day of April, 1896, the Board of Administration passed a resolution extending route No. 15 of street passenger railroads belonging to the defendant, and that on the 16th day of July, 1896, the Board of Administration passed a resolution extending route No. 9 of street passenger railroads belonging to the Cincinnati Street Passenger Railroads, belonging to the Cincinnati Street Railway Company, and the grants provided for in the resolutions respectively, were accepted and bonds duly filed and unapproved.

On December 18, 1896, (Min. 604 G. T.) an entry was made remanding the case to special term, and on the same day a motion was filed to stay the further operation of the original decree (Min. 75) of October 21, 1893, (Min. 725,) until such time as the court might be advised would be reasonable and proper.

The court on December 19, 1896, (Min. 726) ordered: "That the operation and enforcement of the injunction in said final decree be and the same is hereby suspended for the period of six months, will leave at said time to apply for a further suspension thereof." The Cincinnati Street Railway Company by its answer, filed January 30, 1897, (Min. 126) to the supplemental cross-petition of the Cincinnati Inclined Plane Railway Company, became a party to this action.

It is the contention of the city of Cincinnati that the final decree in this case finally established the rights of the city, and of the Cincinnati Inclined Plane Railway Company, as regards the existence or non existence of a railway easement; that courts cannot grant easements or property rights; that they can only declare or find the existence of rights or easements theretofore created, and that in this case the declaration has been made and carried into a final decree that the Cincinnati Inclined Plane Railway Company has no easement in the streets and no property right which the court can protect. It is urged that the suspension of the injunction simply operated to deprive the city of Cincinnati of the right to proceed, by the use of the process of the court, to compel the Cincinnati Inclined Plane Railway Company to obey the injunction, and that the decree could not grant any right to the defendant company to continue the acts found by the final decree to be unlawful.

It is again contended that if the court, after having declared the Cincinnati Inclined Plane Railway Company, a mere trespasser upon the streets, had refused to grant an injunction, the city would not thereby be barred from enforcing its common law right to eject the trespasser and obtain full control of its streets; that the right of the city of Cincinnati cannot be any less ample nor any more restrictive because, in addition to the judicial determination that the Inclined Plane Railway had no rights in the streets, the city of Cincinnati had obtained an injunction and that injunction had been temporarily suspended. In other words, that the suspension of an injunction cannot have any greater effect to deprive a party of

other remedies than a refusal to grant an injunction at all.

It is further insisted that a statute conferring upon a municipal corporation power to abate a nuisance does not create a new right, and that it is but declaratory of "a common law power;" that there is an inherent power in a city to remove unlawful obstructions in its streets and to prevent the use of them for unlawful purposes, and that this is especially the case in Ohio where the supreme court has held that the cities hold the streets in fee and have a property interest in them. (29 Ohio St. 291.)

The suspension of the injunction in the case at bar did not, nor could it, alter the rights of the parties as judicially determined. Those rights were fixed by the final decree. Nor is it necessary for the court to say that the city of Cincinnati, by instituting this suit, made such an election of remedies that, although its right and title have been judicially declared, it has lost all right to recover possession of its own property except under the orders of court. The doctrine of election of remedies applies only to a choice of suits, and rests on the principle that a party having a right to two actions which are inconsistent with each other, cannot, after submitting himself to a court in one suit, maintain another suit which is inconsistent with the former one.

### Conclusion of the Court.

It is not the purpose of the court to discuss the propositions which have been advanced with so much ability by the parties to this action, nor to review the many authorities which have been cited.

The question addressed to this court is not whether a Court of Equity shall, by injunction, protect the Cincinnati Inclined Plane Railway Company in the alleged unlawful occupation of the streets by a street railroad and in the unlawful operation of a railroad until the company shall acquire the right to operate its road in the streets, nor whether the court shall authorize the doing of an unlawful act, because the alleged wrong doer may eventually acquire the right to do some other and different act, nor whether the court shall protect this company in the exercise of a certain kind of privilege until it may become invested with the right to exercise another kind of privilege, nor even whether the Cincinnati Incline Plane Railway Company has any right to condemn the easements which it is now enjoying.

The supreme question is whether the court will protect and enforce its own orders. The Superior Court of Cincinnati in Special Term in this very case (W. L. B. p. 57) upon applicaton of the Cincinnati Inclined Plane Ralway Company, ordered that the original decree of injunction be suspended for a period of six months with leave at that time to make further extension of time. The application was granted for the purpose of enabling the company to make a reasonable proposition to the city for a re-

newal or extension of the grant." In the decree of the General Term of the Superior Court which the Supreme Court of Ohio in 52 Ohio St., p. 609, affirmed *totidem verbis* as the judgment of that court, it was the suggestion of the corporation counsel that the court, instead of making a decree of perpetual injunction, should allow the Cincinnati Inclined Plane Railway Company to apply to the city authorities for a new grant to maintain and operate such lines. The U. S. Circuit Court, too, in the Louisville Trust Co. v. The City of Cincinnati. (76 Fed. Rep. 296, Lurton, J.) said in referring to the 52 Ohio St. p. 609, "It is true that he supreme court did not file an opinion in the case, but it did what was equivalent; it affirmed the judgment for the reasons stated in the opinion below. That affirmation was an adoption of the opinion of the superior court in general term, in which the matters were fully and ably discussed and the conclusion reached that the Inclined Plane Railway Company had no longer any right to maintain and operate the lines of street railway involved in this case. The company was, however, allowed six months in which to apply to the city authhorities for a new grant to maintain and operate such lines."

There is no denial in the pleadings that the city of Cincinnati and the Cincinnati Street Railway Company are claiming the right to tear up the rails of the defendant's company and to stop the running of the cars. Indeed, it is contended in open court that this court had no power to suspend the enforcement of the original decree, and that a violation of the order of December 19, 1896, could only be punished by proceedings in contempt. The court in granting the order (The City of Cincinnati v. The Inclined Plane Railway Company, 4 N. P. Rep. 57) say: "The defendant company by virtue of the privileges given it under the permission of the decree of this court has applied to this court to grant it a further suspension of the order of injunction until it may exhaust every honoarble means to secure from the city a renewal of the grant found valid, or an extension of the grants pronounced invalid. The defendant. as a matter of right, cannot demand a suspenion of the order of injunction; nor the city as a matter of right demand that I shall refuse the suspension. The granting or refusal rests solely in my disretion * * * The present application is granted for the purpose of enabling the company to make a reasonable proposition to the city for a renewal or an extension of its grant."

It is insisted as a claim to the streets now occupied by the Cincinnati Inclined Plane Railway Company, that on or about the 19th day of February, 1895, the Board of Administration of the city of Cincinnati, ordered the Cincinnati Inclined Plane Railway Company to remove its tracks from the streets on or before the 18th day of March, 1895, and also further it is insisted by the Cincinnati Street Railway Company, that under

its several grants it has heretofore at great expense constructed a street railroad track, curves and turn-outs, and the system of overhead electirc plants as authorized in the several resolutions; that it is ready to complete the construction of each of the extensions with their respective over-head plants and no portion of the tracks or plant so constructed can be utilized unless and nntil said company is permitted to enter upon and occupy the other portions of the several extensions, and that the construction work and expenditures now made pursuant to the authority vested in the said company by the several resolutions and upon the faith of the same.

The city of Cincinnati sought this jurisdiction to hear and determine the rights of the respective parties. It is a proceeding in equity which should not partake altogether of the harsher judgments of the law. The maxim may fairly apply that where equity is invoked equity should be done. The Cincinnati Srteet Railway, too, derives all rights under the respective grants from the city of Cincinnati. The city granted and the Cincinnati Street Railway Company received all title and all privileges with a full knowledge of the pendency of the litigation. They were acquired lis pendens, and no one is prejudiced thereby.

The order of this court certainly must have some meaning and was given for some purpose. That order of December 19, 1896, whatever may be its effect, is in full force and operation in law. Proceedings have been commenced to review that order in the general term of this court, and unless reversed or modified it should stand as the judgment of this court. The law should be invested with a supreme majesty. It is demanded by every consideration of public policy. It is necessary for the peace of our streets and the security of our homes.

*As to the Application for a Receiver.*

In addition to the prayer for an injunction in the supplemental answer and cross-petition of the Cincinnati Inclined Plane Railway Company the application is also made for the appointment of a receiver in order to prevent the destruction of this comany's prosperity and the frittering away of its assets and means, and for the purpose of operating said road and preserving its property until further order of the court.

The appointment of receiver is classed as one of the provisional remedies, like the proceedings by injunction or attachment. The court in C. S. & C.R. R. Co. v. Sloane, 31 Ohio St. 1, says that a provisional receivership is, in effect, an injunction, and something more stringent still. It is to be granted with great caution, and only in case of pressing apparent necessity. Edwards on Receivers, 13. The appointment of a receiver is an equitable remedy, and has a similar relation to courts of equity that proceedings in attachment have to courts of law. Hence the appointment of a receiver has been said to be an equitable execution. 1 Jeremy's

Eq. Jur. 249. While the jurisdiction exercised by courts of equity in administering relief by the extraordinary remedy of a receiver *pendente lite* is a branch of this general preventative jurisdiction, and intended to prevent injury to the thing in controversy, to be finally disposed of as the court may direct, the power should not be exercised wihout hesitation.

While, too, the appointment of a receiver *in limine* is like the granting of a preliminary or interlocutory injunction, and not an ultimate determination of the merits of the controversy, and the power is necessarily inherent in courts possessed of equitable jurisdiction under proper limitations, it should only be exercised after a full consideration of the entire circumstances of the case. Before judicial action can be justified on the ground of discretion, the case must be one calling for the exercise of discretion. The power to appoint is not an arbitrary power. The cases in which the power may be exercised are prescribed by Sec. 5587 of the Revised Stats. Six classes of cases are prescribed in which receivers may be appointed. The first relates to actions by a vendor to vacate a fraudulent purchase of property, or by a trustee to subject any property or fund to his claim, or between partners or others jointly interested in any property when it is shown that the property or fund, or the proceeds thereof is in danger, and when it is shown that the property or fund, is in danger of being lost, removed or materialy injured.

The second relates to action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property when it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to pay the debt.

The third relates to judgments and carrying the same into effect.

The fourth relates to judgments and the disposition of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied, or the judgment debtor refuses to apply the property in satisfaction of the judgment.

The fith relates to corporations that have been dissolved or are insolvent or in imminent danger of insolvency, or have forfeited their corporate rights.

The sixth relate to all other cases where receivers have been appointed by the usages of courts of equity.

The court says in 31 Ohio St., p. 1, White, J., that the usages of courts of equity as to the appointment of receivers, when it is not otherwise prescribed by statute, are alike applicable to cases arising under the code.

The contention of the counsel for the city of Cincinnati as well as the Cincinnati Street Railway Company is, that so far as the appointment of a receiver is concerned, the court has neither the jurisdiction nor

the right on the allegations of the supplemental answer and cross-petition to make such an order under the statutes of Ohio which point out either specifically or generally the only cases where the discretion may be exercised. It is not claimed by counsel for the Cincinnati Inclined Plane Railway that the case can come within the first four provisions of Rev. St. 5587 regulating the appointment of receivers; nor is it embraced within the provisions of subdivision 5, which authorizes the appointment of a receiver, "in the cases provided for in this title, and by special statute, when a corporation has been dissolved or is insolvent or is in imminent danger of insolvency, or has forfeited its corporate rights. Title 1, Div. 7; to which reference is made, regulates procedure in appeal in courts having jurisdiction, to-wit: Sec. 4947 and 5912 inclusive. Under that title are the sections authorizing the appointment of a receiver in proceedings in aid of execution, in proceedings in attachment, and by a married woman in an action against her husband in certain cases. Secs. 5485-5539 and 5705. Chap. 5 of this title (Sec. 5651 and 5688 inclusive) provides for the dissolution of corporations on the appointment in certain cases by petition, either of a majority of the directors or of stock-holders representing not less than one-third of the capital stock of the company. There is no allegation in the pleadings, and indeed, no claim, that the Cincinnati Inclined Plane Company, has been dissolved or that it is insolvent or in imminent danger of insolvency, or that it has forfeited its corporate rights.

The defendant, The Cincinnati Inclined Plane Company can only then invoke the power of the court under sub-division 6 of the section which gives the court the right to make the appointment as "receivers have heretofore appointed by the usages of courts of equity." Indeed, counsel contend that a receiver may be appointed at any stage of the proceedings in a court in equity whenever the facts authorize and require the appointment. (High on Receivers, Sec. 51.)

It must be conceded that the appointment of a receiver is merely a provisional remedy, ancillary and auxiliary to the main action, and cannot properly be made by a court of equity in a pending action, the ultimate purpose of which is to obtain some other equitable relief which the court has power to grant. The receiver is described as "the hand of the court," and has no power other than those conferred upon him by the order of his appointment, or such as are derived from the established usages of courts of equity. The expression aptly designates his functions, as well as the relation he sustains to the court. The court in the Chicago & Allegheny Oil & Mining Company et al. v. The United States Petroleum Company, 57 Pa. St. 83, uses this language: "The appointment of a receiver is the exercise of a power in aid of a proceeding in equity and is the subject of sound discretion. The court must be convinced that it

is needful and is the appropriate means to a proper end. It is strong measure and cannot be exercised doubtingly." Courts should be slow in the absence of statutory authority to assume the control and management of a corporation as against the stock-holders to whom the management is entrusted by law.

The application for the appointment of a receiver rests upon the sole ground that the defendant company has made application to the city of Cincinnati, through its proper board, for an extension of its franchise and grants which had been fixed by judicial determination. The ultimate purpose is to secure such franchises and grants as may be necessary for the operation of street railways.

The circuit court of the United States in the case of the Louisville Trust Company v. The Cincinnati Inclined Plane Railway Company, (Taft, J.)directed the receiver heretofore appointed by that court, by an order dated January 4, 1897, to surrender possession of the property in place in the streets of Cincinnati to the Inclined Plane Railway Company, and all the remainder of the property in his custody to the company, conditioned that the company would turn over to the receiver the monthly net earnings from the operation of its property after payment of the running expenses, including salaries, wages and supplies.

The Cincinnati Inclined Plane Railway Company by an agreement filed in the U. S. Circuit Court, January 28, 1897, accepted possession of all its railways and other property in the possession of the receiver and proceeded to operate the same and turn over to the receiver the monthly net earnings derived from such operation after payment of all expenses, including salaries, wages and supplies. Since that time the company has been in the successful operation of the railway, and has even extended its lines.

It would, therefore, in the opinion of the court, be an exercise of judicial power not warranted either by the facts or the law for the court to take possession of the street railway and operate or control the same through a receiver.

### Order of the Court.

An order may be taken enjoining the defendants, The city of Cincinnati and the Cincinnati Street Railway Co., or either of them, from interfering by force or otherwise with the operation of the defendant's road until the expiration of the stay of this court of date of December 19, 1896. (Min. 725.) The application for the appointment of a receiver is dismissed. Decree accordingly.

E. A. Ferguson, Miller Outcalt and Bentley Matthews, for the Cincinnati Inclined Plane Railway Company.

Frederick Hertenstein, Corporation Counsel and J. D. Brannan, for the City of Cincinnati.

E. W. Kittredge, J. W. Warrington, and J. B. Foraker, for the Cincinnati Street Railway Company.